UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JON FIGLIOLINI,              :

    Petitioner,          :

    v.                   :   NO. 99-CR-10172-GAO

UNITED STATES.               :

PETITIONER'S MEMORANDUM IN SUPPORT
OF THE MOTION UNDER § 2255

    Jon Figliolini ("Petitioner") has pending before the Court a motion to set aside or vacate his plea and sentence. Petitioner was granted extensions to file the within memorandum in support of his claims.

SALIENT FACTS

    As part of a plea agreement to an indictment, on August 3, 2000, Petitioner plead guilty to possession of heroin with intent to distribute. On June 27, 2001, Petitioner was sentenced to 210 months of imprisonment, three years supervised release, $100 assessment, and no fine or restitution.

    As stated, the plea was a result of bargaining between Petitioner and the Government. The Agreement was dated July 12, 2000, and signed by Petitioner on July 24, 2000. In the plea agreement the U.S. Attorney's Office agreed that if Petitioner changed his plea to guilty, they would recommend to the Court that Petitioner be given a three-point reduction for acceptance of responsibility.

- 1 -

During the time Petitioner was negotiating the plea agreement and before he and the Government entered into it, the Government and State officials had information that Petitioner and others were allegedly smuggling drugs into the Plymouth County Correction Facility ("PCCF"). In fact, in June, 2000--or well before Petitioner and the Government signed the plea agreement--the U.S. Attorney's Office and DEA officials had interviewed an informant from the PCCF who had given evidence of Petitioner's involvement in the smuggling of drugs into the PCCF. See DEA 6-Report (attached hereto) marked Exhibit A. An official DEA investigation was begun on July 6, 2000, see Exhibit B. This was well before the plea agreement was signed, and before Petitioner actually changed his plea on August 3, 2003. The Government neither informed the Petitioner nor the Court of this investigation into Petitioner's further criminal conduct that would impact the terms of the plea.

On October 27, 2000, Petitioner and others were indicted by the Commonwealth of Massachusetts on charges relating to the PCCF smuggling of drugs. (N.B. These charges are still pending-- although the Commonwealth has indicated they will be voluntarily dismissed. This is because the Government picked up the case, indicted Petitioner for the conduct, and he is now serving a consecutive 63 months sentence for the conduct.)

At sentencing the Government argued against the three-point reduction. The Government referred to only post-plea conduct, failing to mention that they were aware pre-plea that Petitioner was involved in the PCCF conduct. See Exhibits A & B.

At sentencing, Petitioner's counsel unsuccessfully argued for the three-point reduction, using mostly sympathetic arguments. He never mentioned that the Government had bargained in bad faith and had breached the plea agreement by now arguing against the three-point reduction. By then, of course, counsel had the DEA-6 Reports (exhibits herein) and thus knew all the facts now before the Court.

## THE GOVERNMENT BARGAINED IN BAD FAITH

Plea agreements are, more or less, interpreted by the courts as contracts. United States v. Ortiz-Santiago, 211 F.3d 146, 151 (1st Cir.2000). "There is * * * an implied obligation of good faith and fair dealing in every contract. United States v. Rexach, 896 F.2d 710, 714 (2d Cir.), cert. denied, 498 U.S. 959 (1990). Once a petitioner makes a threshold showing that the government "acted in bad faith" in a plea agreement, further hearings may be warranted. U.S. v. Alegria, 192 F.3d 179, 187 (1st Cir.1999).

The Government knew prior to the plea negotiations and the taking of the plea that there was evidence that Petitioner was allegedly involved in the PCCF smuggling conduct. They even had a hand in dealing with the informant in the case. See Exhibit A (informant was "initially debriefed on June 12 & 26, 2000 by [inter alia] AUSA Sheila Sawyer at the U.S. Attorney's Office in Boston, Ma."). The plea agreement is dated July 12, and was signed by Petitioner on July 27, 2000--long after the Government

- 3 -

had become aware that Petitioner was then involved in on-going criminal conduct.

The Government consequently knew--or should have known--when they made the promise to Petitioner that they'd recommend a three-point reduction for acceptance of responsibility that his conduct didn't merit any such recommendation. It's reasonably assumed that they had no intention whatsoever of making such a recommendation. Therefore they bargained in bad faith.

## THE GOVERNMENT BREACHED THE PLEA AGREEMENT

"[T]he constitutional guarantee of due process" is implicated when the Government breaches a plea agreement. United States v. De la Fuente, 8 F.3d 1333, 1336 (9th Cir.1995). The Government most assuredly breached the plea agreement in this case by not only failing to recommend a three-point reduction, but arguing against it.

While it's true that the Government normally would have no obligation to argue for a reduction in this or similar cases, they shouldn't have entered into the agreement if they had no intention of doing so. Perhaps they didn't want to jeopardize an on-going investigation? But then they shouldn't have entered into an agreement that said they would make the three-level reduction recommendation. In fact, they entered into the agreement with their eyes open and knowing more facts than did Petitioner. Consequently, this is still a breach of the plea agreement because they promised to make the recommendation even

- 4 -

though they did so knowing that Petitioner shouldn't get it. In that respect, the Government sandbagged both Petitioner and the Court. They also rendered counsel's assistance ineffective.

### THE PLEA WAS NOT VOLUNTARY OR INTELLIGENT

In Brady v. United States, 397 U.S. 742, 748 (1970), the Court said in a plea context that "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." The First Circuit in United States v. Bouthot, 878 F.2d 1506, 1511 (1989) noted that guilty pleas stand unless a party gave a "misrepresentation (including unfulfilled or unfulfillable promises" (emphasis supplied).

With these concepts in mind it's easily seen that the instant plea was not voluntary (within the meaning of jurisprudence) and certainly not intelligently made. First, under the Brady rubric, Petitioner did not make the plea "with sufficient awareness of the relevant circumstances and likely consequences." This was because the Government failed to tell him that they already had evidence that would warrant them not making the recommended three-level deduction--and, in fact, they weren't going to do so. Second, under the Bouthot holding, the Government put a "misrepresentation" into the plea agreement, since they knew that the three-level reduction was "unfulfillable".

In that respect, counsel stood by while all this was happening. But counsel knew at that time, as the Court knows now, that the Government had been aware of Petitioner's conduct before the plea agreement was signed. For counsel not to object to the entire procedure, and warn the Court that Petitioner hadn't knowingly and intelligently made the plea, amounted to ineffective assistance of counsel. Moreover, Petitioner suffered much prejudice from this: as formerly pointed out, he could have asked the Court to sanction the Government for their conduct by giving the three-level downward adjustment anyway, or by letting him withdraw his plea and go to trial. See further the arguments infra.

## COUNSEL RENDERED INEFFECTIVE ASSISTANCE

Citing to Strickland v. Washington, 466 U.S. 688 (1984), the seminal case on ineffective assitance of counsel, the First Circuit in United States v. LaBonte, 70 F.3d 1396, 1413 (1995), reversed on other grounds, 520 U.S. 751 (1997), recognized that a petitioner must demonstrate that his attorney's performance was unreasonably deficient and that he was prejudiced as a result. Petitioner can meet these standards for at least three reasons.

(a) Counsel Should Have Argued the Plea Breach.

As noted in the background above, counsel made no argument at sentencing, when the Government argued against a three-level

reduction, that there was a breach in the plea agreement. It wasn't as if counsel didn't know that the Government had sandbagged the Petitioner and the Court: counsel had possession of Exhibit A and thus knew that the U.S. Attorney's Office was aware in June, 2000--weeks before they made the plea agreement--that Petitioner was allegedly engaged in criminal activity at PCCF and thus couldn't qualify for the reduction. For counsel not to make this argument rendered his assistance ineffective and constitutionally infirm.

The prejudice was twofold. First, the sentencing court may have simply held the Government's conduct against them and gave the three-level reduction anyway. This would have been the most proper remedy for the Government's chicanery.

Second, and more important, the Petitioner would have been able to argue to withdraw his plea for the reasons argued above. As it were, he didn't want to plead in the first instance. In fact, he consistently told counsel that he was innocent of any distribution (or intent to do so) and had merely been--at all times--a purchaser of drugs for personal use. (There's strong evidence to prove this defense.) But counsel kept telling Petitioner and his family that he'd be convicted and would receive a 300+ month sentence. Counsel's opinions and arguments so scared Petitioner and his family that he finally capitulated and pled out. Counsel told Petitioner that he thought he could get a sentence down to 10 years; if he went to trial and lost he'd receive three times as much. Even though he wasn't guilty of the specific charges, Petitioner feared his admission of

possession might alone convict him and consequently he pleaded.

(b) Counsel Should Have Put the Government to Their Proof.

Counsel was also ineffective for not demanding that the Government be put to their proof of the alleged PCCF conduct. After all, there was nothing to lose and everything to gain. No reasonable attorney would have foregone this tactic.

Petitioner was prejudiced because, at worst, the truthful evidence would have demonstrated that he was merely taking drugs again, not distributing them. Moreover, it would have shown that the PSR claims contrary were false. In fact, the Court was irate to hear that Petitioner allegedly was still involved with his codefendants; this allegation, however, was completely false. But the Court stated that this was one of the reasons why the Court decided not to allow the three-level reduction. See Sentencing Transcript, 6-27-01, p. 21 ("the return to the identical criminal behavior--including, I might note, with some of the same participants as in the original conspiracy, in the original offense").

(c) Counsel Should Have Motioned to Withdraw the Plea.

At that stage, given the Government's duplicity, counsel should have argued the breach and moved to withdraw the plea. Again, there was little to lose and a reasonable attorney would have moved to withdraw the plea and used the Government's conduct

against them.

The prejudice to the Petitioner was that he wouldn't now be in prison. If he withdrew the plea he would have been forced to trial--probably with new counsel. At trial, Petitioner would show that he was merely a dope fiend and distributed nothing--nay, wouldn't give a gram to anyone, but would ingest every bit of drugs he contact with as soon as possible. In fact, on three separate occasions police watched Petitioner buy drugs during this investigation and then stopped and searched him immediately thereafter, but found no drugs. On one occasion they even had a search warrant for a body cavity search--and still found nothing! That's because *all* drugs Petitioner came into contact with were consumed immediately if not sooner; the only caveat was over-dosing. Consequently, had this evidence been presented to a jury, Petitioner is more than certain that, at worst, he would have been convicted of mere possession--the actual criminal conduct. The sentence for that conduct would have seen him long ago out the prison doors.

## CONCLUSION

WHEREFORE, the petition should be granted or other appropriate relief ordered that to the Court seems just, proper and equitable.

Dated this 19th day of July, 2004

RESPECTFULLY SUBMITTED

- 9 -

_/s/ Jon Figliolini_
JON FIGLIOLINI (pro se)
Reg. No. 02372-049
Box 1000
Otisville, NY  10963