UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JON FIGLIOLINI,          )
        Petitioner       )
                         )
        v.               )    CIVIL ACTION NO.
                         )    04-12192-GAO
UNITED STATES OF AMERICA, )
        Respondent.      )

## GOVERNMENT'S OPPOSITION TO PETITIONER'S
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States of America, by and through Michael J.
Sullivan, United States Attorney for the District of Massachusetts,
and the undersigned attorney, hereby files its Opposition to Jon
Figliolini's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,
or Correct By a Person In Federal Custody" ("Figliolini's Motion").
Figliolini's Motion should be dismissed because it is time-barred
and because Figliolini cannot relitigate in the District Court in
the guise of a *habeas* petition claims which he raised on direct
appeal and on which the First Circuit Court of Appeals has already
ruled in the government's favor.

I.          STATEMENT OF FACTS AND PROCEDURAL HISTORY

On May 20, 1999, a federal grand jury named Petitioner, Jon
Figliolini ("Figliolin"), and twenty-two other defendants in a
sealed indictment charging them all with conspiring to possess with
intent to distribute and to distribute one kilogram or more of
heroin, in violation of 21 U.S.C. § 846, and charging several of
his co-defendants with using telecommunication facilities to commit
drug offenses, in violation of 21 U.S.C. §843(b).  This original

indictment was unsealed on or about May 25, 1999 and, on August 3, 2000, the government filed a Superseding Information charging Figliolini with possession with intent to distribute heroin on April 27, 1999 in violation of 21 U.S.C. § 841. [1]  Because Figliolini qualified for sentencing as a career offender, the Superseding Information, and Figliolini's subsequent guilty plea to same, capped Figliolini's maximum exposure to half of the forty years' imprisonment he would have faced under the original Indictment.

On August 8, 2000, Figliolini pleaded guilty to the Superseding Information pursuant to a written plea agreement which had been signed on July 24, 2000. In pertinent part, paragraph 3 of the plea agreement provided that, based on the information known to the U.S. Attorney at that time, the government would recommend a three-level reduction in Figliolini's total offense level for his timely acceptance of responsibility. The same paragraph also explicitly preserved the government's right not to recommend any acceptance-of-responsibility reduction if, at any time after signing the agreement, Figliolini committed a crime. In fact, after

---

[1]  Figliolini's prosecution in connection with the original Indictment and the Superseding Information was handled by then-Assistant U.S. Attorney Dickens Mathieu, who left the U.S. Attorney's Office in July of 2004. The original Indictment was assigned the docket number 01-10172. For reasons unknown to the undersigned AUSA, the Superseding Indictment was assigned the docket number 00-10279. Indeed, the docket entry for the related plea agreement contains the following parenthetical information: "originally docketed improperly in CR 99-10172-GAO."

2

executing the plea agreement with the government, Figliolini
facilitated the transfer to another detainee of heroin which had
been smuggled into the Plymouth County Correctional Facility ("the
PCCF") by a corrupt correctional officer and later solicited help
in having more drugs smuggled into the PCCF.      See copy of
Government's Local Rule 27(C) Motion for Summary Disposition
("Summary Dispo. Mot.") at 3-5, a copy of which is attached hereto
as Exhibit 1.[2]  This subsequent criminal conduct was reflected in
Figliolini's Pre-Sentence Report ("PSR").

     Figliolini's District Court counsel objected to the
information set forth in the PSR, challenging the veracity of the
allegations against his client and noting that the state charges
then pending against his client had not been adjudicated.[3]  In both

_____

     [2]  The government has attached an unsigned copy which was
retrieved from the U.S. Attorney's Office computer system.   The
government has attempted to obtain copies of the pertinent
documents from the Court of Appeals file in Figliolini's direct
appeal (No. 01-2039).  However, Court of Appeals staff have
informed the undersigned that the file in that matter was
retained and transferred to the District Court Clerk's Office in
connection with a pending appeal by Robert Cyr, one of
Figliolini's co-defendants.  Nor has the undersigned been able to
determine which of the seventy boxes in the U.S. Attorney's
Office containing documents relating to United States v. John
Damien, et al. actually contains documents relating to
Figliolini's appeal.

     [3]  The state case against Figliolini was later adopted by
the federal government and a second prosecution was launched in
the U.S. District Court for the District of Massachusetts (United
States v. David Smith and Jon Figliolini, Criminal No. 02-10147-
WGY).  Eventually, Figliolini pleaded guilty to a Superseding
Information in that case and, in March of 2004, Figliolini was
sentenced to another 63-month prison sentence to be served

3

its sentencing memorandum and at the sentencing hearing, the government argued that Figliolini should not receive a reduction for acceptance of responsibility, whereas defense counsel argued that Figliolini's alleged misconduct merely indicated a reversion to a pre-existing pattern of behavior. See Summary Dispo. Mot. at 5-7. This Court concluded that no acceptance-of-responsibility reduction was warranted and sentenced Figliolini to 210 months, the low end of the applicable Guidelines Sentencing Range.

Figliolini appealed his sentence to the Court of Appeals and appellate counsel filed a brief on his behalf on April 4, 2002. The government filed its motion for summary disposition on November 6, 2002 and, on January 10, 2003, the Court of Appeals (Torruella, Stahl and Lipez, J.) granted the government's motion, ruling as follows:

> After careful review of the record, we summarily affirm the district court. Appellant-defendant Jon Robert Figliolini appeals his sentence after pleading guilty to one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He makes two claims on appeal. First, he asserts that the government fraudulently entered into a plea agreement, stating that it would recommend a downward departure for acceptance of responsibility if Figliolini committed no post-plea crime while knowing that it would not recommend such a departure. Second, he claims that his counsel rendered ineffective assistance when he failed to object to the government's alleged fraud or to the government's delivering to him days before sentencing its sentencing memorandum stating its opposition to the downward departure for acceptance of responsibility. The record

_____

consecutively to the sentence he is currently serving and challenging herein.

4

does not support a claim that the prosecutor fraudulently entered into the plea agreement. There is no evidence that, when the prosecution entered into the plea agreement, it knew of an on-going investigation within the prison or that an informant had alleged that Figliolini had asked him to procure drugs. The record reveals only that Figliolini committed a narcotics violation after the plea agreement was signed, and, on this basis, the government did not recommend a downward departure for acceptance of responsibility. Therefore, there is no factual support for Figliolini's allegation that the prosecution behaved fraudulently in signing a plea agreement in which it stated that it would recommend a downward departure if he refrained from post-plea criminal conduct. Figliolini next asserts that he received ineffective assistance of counsel. This court does not ordinarily hear claims of ineffective assistance of counsel on direct appeal. See United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998). However, where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow for a reasoned consideration, an appellate court can determine the merits of the claim on direct appeal. See id. at 27. To establish ineffective assistance of counsel, one must make a two-part showing: (1) that his counsel's performance fell below an objective standard of reasonableness, and that (2) he was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In deciding an ineffectiveness claim, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." See id. at 690. In this instance, Figliolini and the government both appear to argue that the record is sufficient to decide a claim of ineffective assistance of counsel. We decide here only that, to the extent that Figliolini argues ineffective assistance of counsel based on the present record, he cannot prevail. The record does not support the contention of fraud advanced by Figliolini, and it is thus not possible to find that his counsel was unreasonable in failing to object to such alleged fraud on the part of the prosecution. Furthermore, Figliolini points to no statute or case law, and we find none, that requires a sentencing memorandum to be delivered to a defendant in any given time period. Therefore, based on this record, his counsel was not ineffective in failing to raise these two objections. For all of these reasons,

5

we summarily affirm. Affirmed.[4]

Twenty days after the Court of Appeals denied his appeal, Figliolini's appellate counsel filed a motion for leave to withdraw, having concluded that filing a petition for a writ of certiorari would be frivolous. She also certified that she had advised Figliolini of her conclusion and that Figliolini had indicated that he did not wish to pursue further review.  App. Docket for January 30, 2003.  The Court of Appeals' mandate issued the next day.  Ninety days later, on May 1, 2004, Figliolini's time within which to file a petition for a writ of certiorari expired.

More than a year later, on July 23, 2004, the District Court clerk's office received Figliolini's Motion, although it purported to have been signed on April 6, 2004.  It identified five related grounds for relief:

1. that the government had negotiated in bad faith the plea agreement with Figliolini;

2. that the government had breached the plea agreement by failing to recommend a three-level reduction for acceptance of responsibility;

3. that the government's recommendation against an acceptance-of-responsibility reduction was an act of prosecutorial vindictiveness "to gain leverage against [Figliolini] to try to force [him] to

---

[4] For the reasons cited earlier, the undersigned has not been able to obtain a copy of the unreported decision issued by the First Circuit.  The foregoing has been copied verbatim (except for the underscoring of pertinent authorities, which as been added here by the government) from the electronic docket for Figliolini's appeal (01-2039), a printed copy of which ("App. Docket") is attached hereto as Exhibit 2.

cooperate in another investigation";

4.    that his District Court counsel was ineffective;
      and

5.    that Figliolini's guilty plea was not made
      voluntarily and knowingly in light of the
      government's bad faith and subsequent breach of the
      plea agreement.

Figliolini Motion at 2.  The very next document docketed by the

District Court clerk's office was "Petitioner's Memorandum in

Support of the Motion Under § 2255" which purported to have been

signed by Figliolini on July 19, 2004.  It bears essentially the

same headings, although not in the precise order in which the

claims were set forth in Figliolini's Motion.

On October 27, 2004, this Court ordered that copies of

Figliolini's pleadings be served on the U.S. Attorney's Office and

that the government file a responsive pleading within 20 days.

III.                          **ARGUMENT**

1.    **Figliolini's Motion Is Time-Barred:**

Section 2255 of Title 28, United States Code, provides, in

pertinent part, as follows:

A 1-year period of limitation shall apply to a motion
under this section.  The limitation period shall run from the
latest of –

(1) the date on which the judgment of conviction becomes
final;

(2) the date on which the impediment to making a motion
created  by governmental action in violation of the
Constitution or laws of the United States is removed, if the
movant was prevented from making a motion by such governmental
action;

7

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized  by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims  presented  could have been discovered through the exercise of due diligence.

All of Figliolini's claims relate to facts known to him at the time he was sentenced.  Accordingly, the one-year limitations period applicable to Figliolini's claims began on the date when his conviction became final.  28 U.S.C. § 2255(1).  Since the Court of Appeals affirmed his conviction on January 10, 2003 and issued its mandate on January 31, 2003, Figliolini's Motion filed on or about July 23, 2004 fell outside the limitations period.

Accordingly, Guzman's Section 2255 Motion in its entirety is untimely and should be dismissed with prejudice.

2.    **Figliolini Is Procedurally Barred from Relitigating in the Habeas Context Issues Which Have Already Been Decided in Favor of the Government in the Context of His Direct Appeal:**

When a federal prisoner raises a claim that has been decided on direct review, the general rule is that he cannot later attempt to relitigate that claim in a Section 2255 proceeding.  See <u>Withrow</u> v. <u>Williams</u>, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring) (collecting cases); <u>United States</u> v. <u>Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>United States</u> v. <u>Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997); <u>Argencourt</u> v. <u>United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996); <u>Olmstead</u> v. <u>United States</u>, 55 F.3d 316, 319 (7th Cir. 1995);

8

Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992); Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam) (citing cases); United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993); Kastenbaum v. United States, 588 F.2d 138, 139 (5 th Cir. 1979) (per curiam); Oliver v. United States, 90 F.3d 177, 180 (6th Cir. 1996); United States v. Keane, 852 F.2d 199, 203 (7th Cir. 1988); Thompson v. United States, 7 F.3d 1377, 1378-1379 (8th Cir. 1993) (per curiam); cf. United States v. Scrivner, 189 F.3d 825 (9th Cir. 1999).

This approach to federal prisoner collateral litigation is an extension of the law-of-the-case doctrine to the federal-prisoner habeas context. While the law-of-the-case doctrine is discretionary, see United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 199 (1950), the relitigation doctrine can be overriden only when exceptional circumstances exist and prisoners claiming such extraordinary circumstances are rarely successful at persuading the court that relitigation is justified. See, e.g., United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (per curiam); Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). The only notable and recurring circumstance is when there has been an intervening change in the law, usually a new judicial decision narrowly construing the statute of conviction. See Davis v. United States, 417 U.S. 333 (1974). In that setting, courts have been willing to allow a defendant to relitigate a claim affected by the

9

change in law.  See, <u>e.g.</u>, <u>Jones</u> v. <u>United States</u>, 178 F.3d 790, 796 (6th Cir. 1999).  However, Figliolini has neither claimed nor can he show any exceptional circumstances, let alone a change in law affecting his particular situation, which could possibly justify allowing him to litigate for the third time the issues already decided against him by this Court and by the First Circuit Court of Appeals.

3.    **Figliolini's Claims Are Without Merit:**

Even if Figliolini's Motion were not time-barred and even if he were not barred from relitigating the issues already decided by against him by this Court and the First Circuit, Figliolini's claims are without merit for the reasons set forth in the government's motion for summary disposition (Exhibit 1).

IV.                                  **CONCLUSION**

For all the foregoing reasons, the government respectfully submits that Figliolini's Motion should be dismissed with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
Patrick M. Hamilton
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
Date:      November 2, 2004          (617)748-3251

## CERTIFICATE OF SERVICE

    I, Patrick M. Hamilton, do hereby certify that a copy of the foregoing  was served this date, by hand delivery upon Jon Figliolini, Reg. No. 02372-049, Box 1000, Otisville, N.Y. 10963.

Date:      November 2, 2004

                              Patrick M. Hamilton

11