No. 01-2039

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

UNITED STATES OF AMERICA,
Appellee

v.

JON FIGLIOLINI,
Defendant-Appellant

---

## GOVERNMENT'S LOCAL RULE 27(C) MOTION FOR SUMMARY DISPOSITION

In this appeal, Jon Figliolini ("Figliolini") seeks to have the Court set aside his sentence or guilty plea based either on a claim that his defense counsel did not raise in the district court and that is unsupported by the record, and or on his defense counsel's alleged ineffectiveness. As set forth below, the appeal does not raise a substantial question. As a result, pursuant to Local Rule 27(c), the government respectfully moves that the Court summarily dismiss the appeal, or summarily affirm the judgment.

### Relevant Facts

On August 8, 2000, Figliolini pleaded guilty to a one-count superseding indictment alleging that on April 27, 1999, he possessed heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). As set forth in the revised presentence report

("PSR")[1] for a period of eight to twelve months, Figliolini purchased approximately 680 grams of heroin from co-conspirator, John Damien. [PSR, ¶¶ 40-41, 70]. As set out in the PSR, Figliolini had prior drug convictions and was a career offender. As a result, his base offense level was determined to be 32 pursuant to the career offender provision, U.S.S.G. § 4B1.1. [PSR, ¶ 79].[2] With a Criminal History Category of VI, Figliolini's guideline sentencing range ("GSR") was 210 to 262 months. With a three-level acceptance of responsibility adjustment, Figliolini's GSR would be reduced to 151 to 188 months.

Figliolini's guilty plea was entered pursuant to a written plea agreement that was signed on July 24, 2000. [See Transcript of Rule 11 Hearing, page 9]. The plea agreement capped the maximum sentence to which Figliolini could be sentenced at 20 years. [See PSR, ¶207]. If Figliolini had pleaded guilty to the conspiracy count in the indictment, and agreed that he was involved in 100 grams or more of heroin (as he ultimately did with his plea

---

[1] The Probation Office issued the first iteration of the PSR on October 13, 2000. A revised PSR and Addendum were issued on June 19, 2001. All citations in this memorandum are to this version of the PSR. On June 27, 2001, the Probation Office issued a Second Addendum that incorporated Figliolini's objections to the revised PSR. All of these documents are provided in the Government's Supplemental Appendix.

[2] The distribution charge to which Figliolini pleaded guilty involved 10 to 20 grams of heroin, and carried a maximum statutory penalty of 20 years' imprisonment under 21 U.S.C. § 841(b)(1)(C). [Plea agreement, ¶¶ 3(a) and (b)]. As a result, § 4B1.1(b)(C) applied, yielding an offense level of 32.

agreement), his maximum statutory exposure would have been 40 years' imprisonment, and his offense level under the career offender provision would have been 34, rather than 32. His resulting GSR, then, would have been 262 to 327 months.[3]

The plea agreement also provided that the government would recommend a three-level reduction for early acceptance of responsibility. [Plea agreement, ¶ 3]. In particular, the agreement stated:

> Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

[Id.]. The agreement reserved the government's right, however, not to make such a recommendation, if at any time after signing the agreement, Figliolini committed a crime. [Id.]. The agreement further provided that Figliolini could not withdraw his plea, or appeal his plea or sentence, if the government declined to recommend the adjustment or the district court declined to give it. [Plea agreement, ¶¶ 3, 7, and 8].

In June of 2001, the U.S. Probation Office disclosed the

---

[3] The indictment provided notice that the quantity of the conspiracy actually involved one kilogram or more of heroin, which carries a maximum penalty of life imprisonment. It is uncertain, however, that Figliolini would have agreed, post- Apprendi v. New Jersey, 530 U.S. 466 (2000), that the conspiracy involved this quantity.

revised PSR. In its criminal history section, the revised PSR revealed that on or about October 30, 2000, months after Figliolini signed the plea agreement and pleaded guilty, he was charged in Plymouth Superior Court with, *inter alia*, conspiring to distribute a controlled substance. [PSR, ¶ 141]. Paragraphs 141 through 154 of the revised PSR recounted a conspiracy involving Figliolini and others to smuggle narcotics into the Plymouth County Correctional Facility ("PCCF"). Specifically, the revised PSR reported that in June 2000, Alan Theberge, a prisoner at PCCF, told an agent of the Drug Enforcement Administration ("DEA") that he had been approached by Figliolini at PCCF and asked to obtain drugs which Figliolini could then sell in prison. [PSR, ¶¶ 142-143]. The revised PSR reported that Figliolini told Theberge that a corrections officer named Sean Battles would facilitate the smuggle. [PSR, ¶ 143]. Thereafter, the DEA and the Massachusetts State Police commenced an investigation into the matter. [PSR, ¶ 144].

It does not appear from the revised PSR that Figliolini actually engaged in any drug smuggling prior to his change of plea on August 8, 2000. However, according to the revised PSR, on September 8, 2000, Theberge reported that Sean Battles had smuggled narcotics into PCCF for Figliolini on September 7, 2000, and that Figliolini had facilitated the transfer of those narcotics to another detainee. [PSR, ¶ 145]. Figliolini advised Theberge that a number of detainees in Figliolini's unit were "high" on heroin

4

later that evening. [Id.]. After Theberge's release from PCCF, he continued to cooperate with authorities. [PSR, ¶ 147]. On September 20, 2000, the revised PSR reported, "Theberge met with agents and reported that since his release the previous day, he had received three telephone calls from [Figliolini], who was still detained at PCCF," and who was still interested in having drugs smuggled into PCCF. [Id.]. Subsequent intercepted calls confirmed the ongoing interest of Figliolini and Battles in this activity. [PSR, ¶¶ 148-149]. Theberge thereafter told Battles that the latter would have to meet with someone else to get drugs because Theberge was under house arrest. [PSR, ¶ 150]. On October 9, 2000, Battles met with a state trooper, acting undercover as a drug supplier, bought some cocaine and marijuana from him, and was arrested. [PSR, ¶¶ 151-152].

Figliolini's trial counsel objected to the revised PSR. Counsel noted that the state charges against Figliolini were still pending, and that Theberge's allegations were not true. On June 25, 2001, the government filed a sentencing memorandum in which, among other things, it argued that Figliolini's post-plea drug smuggling, as set forth in the revised PSR, disqualified him for a reduction for acceptance of responsibility. [Add. 14-19]. The government and Figliolini addressed the matter further at the sentencing hearing, two days later.

At the sentencing hearing, no evidence was taken, and neither

5

party requested that the hearing be evidentiary in nature. In support of its position that Figliolini should not receive a reduction for acceptance of responsibility, the government argued, in pertinent part:

> [W]e contend, and we believe, the evidence is overwhelming to show that the defendant has not satisfied that provision because the defendant is not remorseful, and that's based on the defendant's post-plea conduct, your Honor.
>
> As argued in our sentencing memorandum, the defendant, after he pled guilty while waiting for this sentence here today, the sentencing here today, was engaged in further criminal conduct, in direct violation of the plea agreement and obviously in direct violation of the law....

[Tr. 10, G.Add. 35] Figliolini's counsel remarked that he did not concede Figliolini's guilt in the allegations regarding Figliolini's post-plea drug dealing at PCCF. Instead, counsel argued that the allegations merely indicated a reversion by Figliolini to "a pattern of behavior he had been subject to since his youth." [Tr. 17-18, G.Add. 42-43].

The district court (O'Toole, J.) concluded that "the adjustment [was] not warranted for acceptance of responsibility." [Tr. 23]. The court remarked that two factors were important in its decision: the fact that Figliolini returned to his criminal ways "relatively soon" after his guilty plea, and the fact that the conduct involved some of the same individuals with whom he had been dealing drugs pre-indictment. [Tr., 23-24, G.Add. 48-49]. The

6

court summarized its rationale as follows:

> [I]f you have a context where a defendant pled guilty to an offense and then either as he is pleading guilty or thereafter and so on returns and participates with the same people, I think it leads to the conclusion that there ought not to be an adjustment under the guidelines.

[Tr. 24]. The court sentenced Figliolini to 210 months, the low end of the applicable GSR.

### Argument

1. **There is no basis in law or fact for Figliolini's claim that the government breached its plea agreement.**

On appeal, Figliolini does not challenge the district court's decision not to give him the three-level acceptance of responsibility reduction. Rather, he claims that there was a fundamental flaw in the plea agreement that should result in his plea or sentence being set aside. Put most simply, Figliolini argues that the government essentially breached its obligation of dealing in good faith, and thereby its plea agreement, because (he claims) although it said in the plea agreement that based on the information it had available to it, Figliolini was entitled to the acceptance-of-responsibility adjustment, it (according to Figliolini) in fact had information available to it that Figliolini was not entitled to the adjustment.[4]  Cf. United States v. Alegria,

---

[4] In his plea agreement, Figliolini waived the right to appeal the government's acceptance-of-responsibility
(continued...)

7

192 F.3d 179, 187 (1st Cir. 1999)("we think that...the government must perform in good faith the discretionary obligations that it affirmatively undertakes in a plea agreement"). Figliolini readily acknowledges that this argument was not raised in the district court,[5] and that review on appeal, at best, can be only for plain error. *Cf.* United States v. Vonn, 122 S.Ct. 1043, 1048-54 (2002)(unobjected-to error in guilty plea colloquy reviewed only for plain error). *See, more generally*, United States v. Olano, 507 U.S. 725 (1993)(there must be an error, that is clear and obvious, that affects substantial rights; and that seriously affects the fairness, integrity, or public reputation of judicial proceedings).

Figliolini's argument rests on a basic legal assumption with which the government does not agree. The government does not agree, that is, that it has an obligation to tell a defendant who is contemplating either a guilty plea or a plea agreement that he is under investigation for unrelated criminal activity. First, the government has the right to engage in covert investigations. *Cf.*

---

[4] (...continued)
recommendation and his "guilty plea and any other aspect of [his] conviction." [Plea Agreement, ¶ 3, G.Add. 3] To the extent that Figliolini is challenging the government's recommendation, or his guilty plea, those arguments are precluded by the waiver provision. The government does not believe this provision prevents Figliolini from claiming that the government breached the plea agreement, however.

In any event, as set forth below, all of Figliolini's arguments fail for the reason the breach argument fails.

[5] *See* Figliolini's brief, pages 10, 15, 19-20, 25.

United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994)(discussing the need for government "sting" operations). Second, if a defendant is in fact engaged in ongoing criminal activity, that is information peculiarly within the defendant's knowledge. The government has no obligation to disclose to the defendant that which he already knows. *See* Giles v. Maryland, 386 U.S. 66, 96 (1967) (White, J., concurring) (observing that "any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense"). *And cf.* United States v. Bouthot, 878 F.2d 1506, (1st Cir. 1989)("there is no doubt that the Constitution does not require a state to provide a defendant with every piece of information that would affect his decision to plead guilty...We refuse to rule that a plea-bargaining defendant has a constitutional right to information possessed by the prosecutor regarding an ongoing or potential prosecution by another sovereign").

This case, however, may be resolved easily without submersion into this legal question, for Figliolini's appeal also rests on a key factual premise that is completely unsupported by the record, and which, moreover, the Court need not decide. Figliolini's appeal boils down his claim that the government misrepresented what it knew at the time of the plea agreement, and acted in bad faith, because it "would have known that it could renege on the deal it

9

made under the terms of the contract." [Figliolini's brief, page 14]. Nothing in the record supports this argument. Even assuming that the United States Attorney's Office was aware prior to the date Figliolini signed the plea agreement of Theberge's allegation that Figliolini was soliciting Theberge to smuggle drugs into PCCF,[6] nothing in the record establishes that the government had any idea that ultimately (and, in particular, after the plea) there would be actual, corroborated evidence that Figliolini was selling drugs in the PCCF sufficient to deny Figliolini the three-level acceptance-of-responsibility adjustment. The concrete information in the revised PSR about Figliolini's actual drug trafficking in prison establishes the time period of that activity to be September 2000, months after Figliolini signed the plea agreement and pleaded guilty in this case. Indeed, at sentencing it was only Figliolini's post-plea conduct that the government relied upon in arguing against acceptance of responsibility. [Tr. 10, G.Add. 35] As a result, all of Figliolini's various arguments for relief (e.g., that the government breached the plea agreement; that his plea was involuntary because it was based on a misrepresentation;

---

[6] The record is entirely silent on when the United States Attorney's Office learned that Figliolini was under investigation at PCCF. What the record does reflect is that the DEA and the State Police became interested in Figliolini, after they learned from Alan Theberge that Figliolini was conspiring to smuggle drugs into PCCF. [PSR, ¶¶142-143]. However, the revised PSR does not indicate when that information was first conveyed to United States Attorney's Office.

10

and so forth) must fail. See <u>United States v. Olivier-Diaz</u>, 13 F.3d 1, 5-6 (1st Cir. 1993) ("Where the error defendant asserts on appeal depends upon a factual finding the defendant neglected to ask the district court to make, the error cannot be 'clear' or 'obvious' unless the desired factual finding is the only one rationally supported by the record.").[7]

Finally, the obvious should not go unsaid: Figliolini, not the government, held the key to the appropriateness of the acceptance-of-responsibility reduction. All he had to do to ensure that the government recommend the reduction was comply by the terms of his plea agreement and, in particular, not commit new crimes. His appellate proposition that the government should somehow be blamed for his own misconduct is extraordinary and untenable.

### 2.  *Figliolini's ineffective-assistance-of-counsel claim must also be rejected*.

Figliolini claims his defense counsel was ineffective by not objecting to the government's alleged breach of the plea agreement.

---

[7]  Figliolini also claims that he did not receive timely notice of the revised PSR, or of the government's decision to recommend against the three-level acceptance-of-responsibility adjustment, and for this reason his sentence should be set aside. As noted above, the revised PSR, which contains the information about the PCCF activity, was disclosed to counsel on June 19, 2001. The second addendum, which included defense counsel's objections to the revised PSR, was the only aspect of the PSR that was disclosed just prior to the sentencing hearing. At sentencing, moreover, defense counsel advised that he had read the PSR. The record, then, does not support the contention that the PSR was received late, in violation of Fed. R. Crim. P. 32(b). With respect to the government's sentencing memorandum, the government was not required to provide that to defense counsel at any particular point in time.

11

To establish ineffective assistance of counsel, a defendant must show that his lawyer's performance fell below an objective standard of reasonableness, and that he was prejudiced thereby, meaning "that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687 and 693-94 (1984). Normally ineffective-assistance-of-counsel claims require some factual development and so must be first brought in the district court. United States v. Mala, 7 F.3d 1058, 1063 (1st Cir.1993). Because, as discussed earlier, there is no evidence supporting Figliolini's claim that the government breached its plea agreement, or acted in bad faith in negotiating it, Figliolini was not prejudiced by his lawyer's "failure" to make this argument in the district court.[8]

---

[8] Figliolini's conclusory claim that his lawyer was ineffective in failing to object to the "late notice" of the government's intent to oppose an acceptance-of-responsibility adjustment must also be rejected as it is based on nothing more than the fact that the government filed a sentencing memorandum two days prior to sentencing in which it stated its intent. There is nothing in the record establishing that Figliolini's lawyer did not know of the government's decision prior to the date that the memorandum was filed. Nor, as discussed in the text, can Figliolini establish prejudice flowing from this alleged ineffectiveness.

## CONCLUSION

For these reasons, the government respectfully requests that the Court summarily dismiss the appeal, or summarily affirm the judgment.[9]

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

                             By: _____
                                   DICKENS MATHIEU
                                   Assistant U.S. Attorney

---

[9] If the Court finds that it cannot dispose of the appeal by summary disposition, the government respectfully requests permission to file a responsive brief.

## CERTIFICATE OF SERVICE

I, Dickens Mathieu, Assistant U.S. Attorney, certify that I caused one copy fo the government's motion for summary disposition to be served by **overnight mail** on the appellant's attorney, Lois M. Farmer, Esquire, Garnick & Scudder, P.C., 32 Main Street, P.O. Box 398, Hyannis, Massachusetts 02601, on November 6, 2002.

_____